## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| THE ASPEN BRANDS HOLDING COMPANY, KATE ASPEN, INC. and SMART MARKETING, INC., <br><br> Plaintiffs, <br><br> v. <br><br> WISH ROCKET, LLC, CHEAPFAVORSHOP.COM, INC., WEDDING FAVORS.ORG, INC., BABYFAVORS.COM, INC., and RONALD GARY SPINKS, <br><br> Defendants. | Civil Action No. <br><br> _____ |

## COMPLAINT

Plaintiffs The Aspen Brands Holding Company, Kate Aspen, Inc. and Smart Marketing, Inc. file this Complaint against Defendants Wish Rocket, LLC, Cheapfavorshop.com, Inc., Weddingfavors.org, Inc., Babyfavors.com, Inc., and individual Ronald Gary Spinks, showing the Court as follows:

## THE PARTIES

1.      Plaintiffs The Aspen Brands Holding Company, Kate Aspen, Inc., and Smart Marketing, Inc. (collectively, "Aspen Brands") are Georgia domestic profit

corporations.  The Aspen Brands Holding Company is the parent company of Kate Aspen, Inc. and Smart Marketing, Inc.

2.      Aspen Brands markets distinctively designed lines of baby shower, bridal shower, and wedding favors and innovative baby gifts through its network of authorized online retailers and via its direct-to-consumer websites.

3.      Defendant Wish Rocket, LLC is a Texas limited liability company with its principal place of business located at 4705 Tour 18 Drive, Flower Mound, Denton County, Texas, 75022-6451, and an office at 2910 Belmeade Drive, Carrollton, Dallas County, Texas, 75006-2379. On information and belief, Wish Rocket, LLC is the parent company of multiple business entities, including Cheapfavors.com, Inc., weddingfavors.org, Inc., and babyfavors.com, Inc.  Ronald Gary Spinks is its registered agent, director, and president.

4.      On information and belief, Defendant Cheapfavorshop.com, Inc. is a business located in Texas with its principal place of business located at 2910 Belmeade Drive, Carrollton, Dallas County, Texas, 75006-2379.

5.      On information and belief, Defendant Weddingfavors.org, Inc. is a business located in Texas with its principal place of business located at 2910 Belmeade Drive, Carrollton, Dallas County, Texas, 75006-2379.

6.      On information and belief, Defendant babyfavors.com, Inc. is a business located in Texas with its principal place of business at 2910 Belmeade Drive, Suite 106, Carollton, Dallas County, Texas, 75006.

7.      On information and belief, Defendant Ronald Gary Spinks is an individual residing at 4705 Tour 18 Drive, Flower Mound, Denton County, Texas, 75022.

8.      On information and belief, Defendant Spinks is an individual who is an officer, shareholder, and/or director of and/or owns, operates, or otherwise controls Defendants Wish Rocket, LLC, CheapFavorshop.com, Inc., weddingfavors.org, Inc., and babyfavors.com, Inc. (the "Corporate Defendants").

9.      On information and belief, Defendant Spinks has, at all relevant times, owned, operated, or been financially responsible for the activities of the Corporate Defendants.

10.     On information and belief, Defendant Spinks (a) personally participated in and/or had the right and ability to direct and control the wrongful conduct alleged in this Complaint, and (b) derived direct financial benefit from that wrongful conduct.

11.     On information and belief, at all relevant times Defendant Spinks has participated in, controlled, and/or had the right and ability to direct and control the

wrongful conduct alleged in this Complaint, and profited from, realized, derived, and/or stood to realize a direct financial benefit from that wrongful conduct.

12.       On information and belief, each of the Corporate Defendants is the alter ego of, agent of, and/or affiliated with Defendant Spinks.

## JURISDICTION AND VENUE

13.       This Court has personal jurisdiction over the Corporate Defendants because they transact business in the State of Georgia and have caused tortious injury by act or omission in Georgia. The Corporate Defendants offer their products and services via the Internet and ship their products nationwide.

14.       This Court has personal jurisdiction over Defendant Spinks because, upon information and belief, Defendant Spinks transacted business in Georgia, contracted with parties in Georgia, supplied goods into Georgia, and caused tortious injury by act or omission in Georgia.

15.       Venue is proper under 28 U.S.C. § 1391(b) because the Corporate Defendants are deemed to reside in this judicial district and because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

16.     This Court has subject matter jurisdiction under 28 U.S.C. § 1338(a), which gives the federal district courts original and exclusive jurisdiction over matters arising under the Copyright Act.

17.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because the Lanham Act, 15 U.S.C. § 1121, provides for original jurisdiction over actions arising under it.

18.     This Court also has subject matter jurisdiction under 28 U.S.C. § 1332 because this is an action between citizens of different states and the amount in controversy exceeds $75,000.00.

19.     This Court also has supplemental jurisdiction over Aspen Brands' state law claims pursuant to 28 U.S.C. § 1367 because they are so related to the claims under the Copyright Act and Lanham Act so as to form part of the same case or controversy under Article III of the Constitution.

## FACTUAL ALLEGATIONS

20.     Aspen Brands sells a variety of products that can be customized by the purchaser, such as glassware, totes and bags, candles, coasters, and drinkware.

21.     Aspen Brands' products are sold directly to the consumer via Aspen Brands' director-to-consumer websites, and are also sold through Aspen Brands' network of authorized online retailers ("Authorized Retailers").

22.     Aspen Brands' Authorized Retailers offer Aspen Brands products for sale and fulfill any orders that are placed for Aspen Brands products exclusively through Aspen Brands.

23.     Authorized Retailers must comply with Aspen Brands' terms and conditions. Subject to those terms and conditions, Authorized Retailers have access to Aspen Brands' proprietary product personalization tool.

24.     Aspen Brands only allows Authorized Retailers to sell genuine and authentic Aspen Brands products in order to protect its brand and intellectual property, and to ensure that customers receive genuine, quality products.

## Aspen Brands' Intellectual Property

25.     Aspen Brands is the owner of federally registered copyrights in the print designs that appear on Aspen Brands' products.  The designs are registered under U.S. Registration Nos. VAu 1-238-291, VAu 1-238-292, VAu 1-238-293, and VAu 1-238-294 (collectively, "Print Designs"), attached hereto as **Exhibit 1**.

26.     Although Aspen Brands makes the Print Designs available to its Authorized Retailers, the only authorized use of these copyrighted materials is for the advertising, promotion, offering to sell, and/or sale of *authentic* Aspen Brands products, *i.e.*, products that are in fact manufactured for, and distributed by and through, Aspen Brands.

6

27.     Aspen Brands is also the owner of a federally registered, incontestable trademark in KATE ASPEN, U.S. Registration No. 3,378,230, which issued on February 5, 2008.  A copy of U.S. Registration No. 3,378,230 is attached hereto as **Exhibit 2**.  It constitutes prima facie evidence of validity of the mark and serves as constructive notice of Aspen Brands' ownership of the mark.

28.     Aspen Brands has been using the KATE ASPEN mark in commerce in connection with wedding and event gifts and favors since at least as early as 2004.

29.     Aspen Brands' gifts, favors, and other products are well known and highly regarded throughout the industry.  The KATE ASPEN name, logo, and trademarks serve to identify and distinguish Aspen Brands' high quality products from the products sold by other companies and to signify the high level of quality that customers have come to expect from Aspen Brands.

30.     As a result of extensive advertising and sales under the KATE ASPEN mark, Aspen Brands has developed substantial goodwill, recognition, and common law trademark rights in the KATE ASPEN trademark throughout the United States.

31.     Although Aspen Brands makes the KATE ASPEN trademark available to its Authorized Retailers, the only authorized use of the KATE ASPEN

trademark is in connection with advertising, promoting, offering to sell, and/or selling authentic Aspen Brands products—*i.e.*, products that are in fact manufactured for, and distributed by and through, Aspen Brands.

32.     Aspen Brands has developed a proprietary glassware personalization tool (the "Design Tool").  The Design Tool's software allows potential customers and end users to enter text and select Aspen Brands' copyrighted Print Designs and preview how the designs and text will appear on personalized and customized glassware supplied by Aspen Brands.  Once an end user has selected a design and/or text to include on the product using the Design Tool, the customer may place an order for these customized goods.

33.     Aspen Brands makes the Design Tool available to Authorized Retailers to use on their websites solely for advertising, promoting, offering to sell, and selling only authentic Aspen Brands goods, and fulfilling all orders for Aspen Brands goods through Aspen Brands.

34.     Aspen Brands is serious about protecting its intellectual property. Aspen Brands has put all visitors to its websites, including Authorized Retailers, on notice that all of the contents of Aspen Brands' websites, including, but not limited to the Print Designs, the KATE ASPEN mark, and the Design Tool, as well as the websites themselves, are protected by Aspen Brands' copyrights and

8

trademarks, as well as any other applicable intellectual property laws. (*See, e.g.,* http://kateaspen.theaspenbrands.com/Term_ConditionsInfo.html.)

35.     Aspen Brands has never authorized Defendants, or any Authorized Retailer, to manufacture, copy, reproduce, modify, or create derivative works from its copyrighted, trademarked, and other unique products.

**Defendants' Wrongful Conduct**

36.     Until December 1, 2015, the Corporate Defendants were Authorized Retailers of Aspen Brands products.

37.     Upon information and belief, in and about July 2014, Defendants, realizing the goodwill and reputation that Aspen Brands had built, and wishing to unjustly profit from that goodwill and reputation, began fulfilling orders for genuine Aspen Brands products with poor quality knock-offs.

38.     In particular, Defendants used the KATE ASPEN mark, the copyrighted Print Designs, and Aspen Brands' proprietary Design Tool to advertise, promote, and offer to sell to consumers and the general public what Defendants purported to be quality Aspen Brands products.

39.     Defendants advertised these products at a deep discount, and instead of using Aspen Brands to fulfill numerous orders, Defendants manufactured, or had manufactured, non-authentic, infringing, and poor quality knock-off Aspen

Brands products, including using the copyrighted Print Designs and KATE ASPEN mark to advertise non-authentic products that were sold to consumers throughout the United States.

40.    Upon information and belief, Defendants do not receive their imported non-authentic products from Aspen Brands' manufacturer.

41.    Defendants have also allowed customers to use Aspen Brands' proprietary Design Tool in an unauthorized fashion by permitting customers to build and preview authentic Aspen Brands personalized glassware with original and copyrighted Aspen Brands designs, and then delivering counterfeit goods to those customers.

42.    Customers who have purchased products on the basis of information such as Aspen Brands' KATE ASPEN mark and copyrighted Print Designs (such information having been provided on Defendants' websites, including, but not limited to, CheapFavorShop.com) would have expected to receive genuine Aspen Brands products, which have the level of quality that Aspen Brands is known for. But this did not occur.  Defendants' advertising and promotion was false and misleading.

43.    The knock-off Aspen Brands goods being supplied by Defendants are of lesser quality than official Aspen Brands products.  In fact, since they began

making the knock-off products, Defendants have received numerous complaints regarding the quality of their products and service. For example, as of January 14, 2016, the Better Business Bureau website entry for weddingfavors.org (http://www.bbb.org/western-ontario/business-reviews/wedding-supplies-and-services/weddingfavorsorg-in-wyoming-on-1049376) reported five customer complaints over the last three years, all of which were reported during the time period from April 23, 2015, to May 11, 2015.  Three were categorized as problems with product/service.

44.     As of January 14, 2016, the Better Business Bureau website entry for Cheap Favor Shop in Carrollton, Texas (http://www.bbb.org/dallas/business-reviews/online-retailer/cheap-favor-shop-in-carrollton-tx-90558332) reported two customer complaints over the last three years for the company, both of which dealt with advertising/sales issues.

45.     The first such complaint, made on September 4, 2015, stated:

> I ordered 9oz wine glasses on May8th from this company for a party which was noted to them that it would take place on June 6th. Weeks went by and I never recieved any confirmation nor shipping information. Everytime I called I got no answer and none of my messages were returned. Finally I got in contacf with someone the week before my event to be told that my order had not shipped yet and would not ship until 4 days before the event. They are in texas and I am in NJ so I became panicked. I finally reached someone the Friday before the event

whom told me it would ship out the following Monday June 1. I recieved theses glasses two days before my event to the dissapointment that they were actually not at all wine glasses but instead small candle holders. There return policy says refunds are accepted. I contacted them and was told that their "disclaimer" states no refund on personalized items. I was never told this prior to nor does it state this anywhere on the website. They falsely advertised that this item is a stemless wine glass which in reality its too small to even drink out of without your nose entering the "cup". These were not given out at the party and now they are telling me I cannot be refunded.Product_Or_Service: 9 oz stemless wine glass

46. The second complaint, made on November 24, 2015, reported that the "company is fraud" because the complainant ordered gifts and paid with a credit card, but had never received the ordered merchandise and could not get an answer at the company's telephone number.

47. Photos uploaded by a Cheap Favor Shop customer to an online review website           (http://www.sitejabber.com/reviews/www.cheapfavorshop.com#19) demonstrate Defendants' infringing use of the Print Designs on the inferior knock-off products and with inferior customer service.

48. Multiple customers dissatisfied with Defendants' knock-off Aspen Brands products have reported actual confusion regarding whether Aspen Brands is the source or sponsorship of those inferior products and associated services.

49.     On April 19, 2015, Aspen Brands received an email complaint to its customer service department indicating that the customer was "very very disappointed in your company" due to an unfulfilled order. The order number and phone number the customer reported having called for service both indicated that the product had been ordered from CheapFavorShop.com, not from Aspen Brands.

50.     A similar instance of customer confusion occurred in August 2015.

51.     Defendants have also used Aspen Brands' copyrighted material and trademarks to falsely suggest that the sale of their non-authentic Aspen Brands products is affiliated with, or endorsed by, Aspen Brands.

52.     Defendants have used Aspen Brands' copyrighted material and trademarks to advertise, promote, offer to sell, and sell non-authentic, infringing, poor quality products, that they falsely hold out to be genuine quality Aspen Brands products, to hundreds and perhaps thousands of customers and potential customers throughout the United States, including in Georgia and in this district.

53.     Defendants' unauthorized activity has taken place on at least the following websites – CheapFavorShop.com, WeddingFavors.org, and BabyFavors.com – and has been further sustained through at least Google Shopping Ads.

54.     On December 1, 2015, Aspen Brands wrote to Defendant Cheap Favor Shop, ordering it to cease and desist the use of the KATE ASPEN mark, the copyrighted Print Designs, and the proprietary Design Tool.  Aspen Brands also informed Defendant Cheap Favor Shop that its status as an Authorized Retailer was terminated effective December 1, 2015.

### Specific Evidence of Defendants' Wrongful Conduct

55.     On or about November 23, 2015, an employee of Aspen Brands placed an order with CheapFavorShop.com under Order No. CFS5022157416 for personalized stemless wine glasses. The website displayed one of Aspen Brands' copyrighted Print Designs.  This was an unauthorized use of the Print Designs.

56.     The CheapFavorShop.com website also displayed the KATE ASPEN mark in connection with the Print Designs and the Design Tool.  This was an unauthorized use of Aspen Brands' trademark.  A screen shot taken from the CheapFavorShop.com website showing this unauthorized use is attached as **Exhibit 3**.

57.     At the time of purchase, on the webpage where the product was offered for sale, Defendants held themselves out to be selling genuine Aspen Brands products.  But the order placed with Defendants was not fulfilled by Aspen Brands, and the products received by Aspen Brands were knock-offs.

14

58.     When the product arrived, it was clear that the ordered product had not been supplied by Aspen Brands.  For example, Aspen Brands only sells this product personalized with a minimum order of 36 glasses.  The product ordered through CheapFavorShop.com, though, could be ordered in a quantity less than 36. The color was also different from what the Aspen Brands employee had ordered.

59.     Further, the ordered product came from Wish Rocket at 2910 Belmeade Drive, Carrolton, Texas, 75006, instead of the address of the Aspen Brands' fulfillment center.

60.     Defendants had advertised the product as an Aspen Brands product, provided a selection of Aspen Brands' unique, copyrighted Print Designs, and even though the Aspen Brands employee had ordered a copyrighted Print Design, Defendants did not deliver what was ordered.

61.     Also, as recently as April 5, 2016, the weddingfavors.org website featured a bar on the bottom of each webpage in distinctive pink and yellow lettering stating that it is "a kate aspen preferred site." The bar was a hyperlink which, if clicked, directed the user to kateaspen.com, one of Aspen Brands' product websites. A screen shot taken from weddingfavors.org showing this website bar is attached as **Exhibit 4**.

## Defendants' Deceptive Acts Have Caused Injury to Aspen Brands

62.    Defendants' wrongful acts, including the infringement of Aspen Brands' copyrighted material, trademarks, and proprietary Design Tool, as well as Defendants' misleading and deceptive practices and false advertising, have caused injury to Aspen Brands in the form of, at least, lost profits, lost sales, loss of goodwill, and reputational damage.

63.    Beginning around July 2014, the orders placed with Aspen Brands by Defendants decreased dramatically.  By 2015, fulfillment orders on certain items placed by Defendants with Aspen Brands had dropped to near zero.

64.    Upon information and belief, this decrease cannot be attributed to market forces.  This decrease is inconsistent with the fact that Defendants were still advertising these products using the copyrighted Print Designs, as well as the KATE ASPEN mark.

65.    The decrease in orders placed with Aspen Brands by Defendants and the associated lost profits is directly attributable to Defendants' deception, passing-off, false advertising, and infringement.

66.    Defendants' deception, passing-off, false advertising, and infringement have also caused injury to the goodwill and reputation of Aspen

Brands through the sale of inferior quality products that Defendants have held out to be supplied by Aspen Brands.

## COUNT I
## Copyright Infringement

67.     Aspen Brands restates and incorporates by reference the allegations of paragraphs 1 through 66.

68.     Aspen Brands, at all relevant times, has been the sole author of the Print Designs that are the subject of the registered copyrights listed in Exhibit 1.

69.     Aspen Brands has registered the copyrights in the Print Designs that are the subject of the registered copyrights listed in Exhibit 1.

70.     Aspen Brands has been and is the owner and proprietor of all right, title, and interest in the copyrights in the Print Designs.

71.     Because the Corporate Defendants were Authorized Retailers, Defendants had access to the Print Designs.

72.     Defendants, without Aspen Brands' authorization, approval, permission, or license, have copied, distributed, displayed, and/or prepared derivative works based on the copyrighted Print Designs, intentionally infringing Aspen Brands' exclusive rights under the copyrights in violation of the federal Copyright Act, 17 U.S.C. §§ 101 *et seq.*

73.     Defendants knew or reasonably should have known that the Print Designs were protected by copyright such that the Defendants' copyright infringement was willful.

74.     As a direct result of their infringement, Defendants have made, and are continuing to make, substantial profits and/or monetary gains to which they are not entitled in law or equity.

75.     As a direct and proximate result of Defendants' acts of copyright infringement, Aspen Brands is entitled to damages and Defendants' profits pursuant to 17 U.S.C. § 504(b), or alternatively to the maximum statutory damages pursuant to 17 U.S.C. § 504(c).

76.     Aspen Brands is further entitled to an order that Defendants render an accounting to Aspen Brands for any and all gains, profits, and benefits derived from Defendants' acts of infringement and ordering that all such amounts be deemed to be held in constructive trust for Aspen Brands.

## COUNT II
## Lanham Act Trademark Infringement (15 U.S.C. § 1114)

77.     Aspen Brands restates and incorporates by reference the allegations of paragraphs 1 through 66.

78.     Aspen Brands owns the registered trademark KATE ASPEN described in Exhibit 2.

79.     Defendants have used in commerce the KATE ASPEN mark as portrayed in the screenshot images attached as Exhibits 3 and 4.

80.     Defendants have used the KATE ASPEN mark in connection with the sale, offering for sale, distribution, and/or advertising of their competing, knock-off products.

81.     Defendants' use of the KATE ASPEN mark in connection with their competing, knock-off products is likely to cause confusion, or to cause mistake, or to deceive, in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

82.     Aspen Brands has been harmed by Defendants' actions in an amount to be proved at trial.

83.     Aspen Brands is entitled to all profits arising from Defendants' unlawful acts.

84.     Aspen Brands is entitled to treble damages pursuant to 15 U.S.C. § 1117.

## COUNT III
## Lanham Act False Designation of Origin (15 U.S.C. § 1125(a))

85.     Aspen Brands restates and incorporates by reference the allegations of paragraphs 1 through 66.

86.     Defendants' use of the KATE ASPEN mark in connection with their competing, knock-off products is likely to cause confusion, or to cause mistake, or

to deceive as to the affiliation, connection, or association of Defendants with Aspen Brands.

87.     Defendants' use of the KATE ASPEN mark in connection with their competing, knock-off products is likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval by Aspen Brands of Defendants; their competing, inferior, knock-off products; and/or their commercial activities.

88.     Defendants' use of the KATE ASPEN mark in connection with their competing, knock-off products constitutes false designation of origin/unfair competition, in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

89.     Aspen Brands has been harmed by Defendants' actions in an amount to be proved at trial.

## COUNT IV
## Georgia Uniform Deceptive Trade Practices Act (O.C.G.A. § 10-1-370)

90.     Aspen Brands restates and incorporates by reference the allegations of paragraphs 1 through 66.

91.     Defendants' actions are likely to cause, and have already caused, confusion or misunderstanding as to the source, sponsorship, approval or

certification of the Defendants' services and competing, knock-off products by Aspen Brands.

92.     Defendants' actions constitute an unfair or deceptive trade practice which otherwise is likely to cause confusion or misunderstanding.

93.     Defendants engaged in these deceptive trade practices willfully, knowing them to be deceptive, entitling Aspen Brands to attorneys' fees under O.C.G.A. § 10-1-373(b)(2).

94.     Aspen Brands has been harmed by Defendants' actions in an amount to be proved at trial.

**COUNT V**
**Georgia Fair Business Practices Act (O.C.G.A. § 10-1-390)**

95.     Aspen Brands restates and incorporates by reference the allegations of paragraphs 1 through 66.

96.     The Corporate Defendants are entities covered by the Georgia Fair Business Practices Act.

97.     Defendants' actions deceive the consuming public by causing actual confusion and misunderstanding as to the source, sponsorship, approval or certification of the competing, knock-off products sold by Defendants, in violation of O.C.G.A. §§ 10-1-393(a) and (b)(2).

98.     Defendants' unfair and deceptive acts have an impact on the consumer marketplace and the public interest.

99.     The general consuming public will be greatly served if Defendants are prevented from continuing their deceptive trade practices.

100.    Defendants' unfair and deceptive acts caused and continue to cause injury to Aspen Brands in the form of consumer confusion, loss of goodwill, and other injuries to Aspen Brands' legitimate business interests.

101.    Pursuant to O.C.G.A. § 10-1-399(a), Aspen Brands is entitled to its actual damages suffered as a result of Defendants' unfair business practices.

102.    Defendants have intentionally violated the Georgia Fair Business Practices Act, and Aspen Brands is entitled to exemplary damages, treble damages, reasonable costs, and attorneys' fees, pursuant to O.C.G.A. §§ 10-1-399(a), (c) and (d).

## COUNT VI
## Unfair Competition Under Common Law

103.    Aspen Brands restates and incorporates by reference the allegations of paragraphs 1 through 66.

104.    Defendants' use of the KATE ASPEN mark in connection with their competing, knock-off products is likely to cause confusion or misunderstanding as

to the source, sponsorship, approval, certification, affiliation, connection, or association of Defendants with Aspen Brands.

105.    Defendants' use of the KATE ASPEN mark in connection with their competing, knock-off products constitutes unfair competition under Georgia law.

106.    Aspen Brands has been harmed by Defendants' actions in an amount to be proved at trial.

## COUNT VII
## Unjust Enrichment

107.    Aspen Brands restates and incorporates by reference the allegations of paragraphs 1 through 66.

108.    Defendants wrongfully benefited from the acts described in this Complaint, including infringing Aspen Brands' intellectual property to pass off their competing, knock-off products as official Aspen Brands products.

109.    To allow Defendants to retain the benefits they wrongfully received would be unfair and unjust.

110.    As a direct and proximate result of Defendants' unjust enrichment, Aspen Brands has been damaged in an amount to be proven at trial.

## COUNT VIII
## (O.C.G.A. § 13-6-11)

111.    Aspen Brands restates and incorporates by reference the allegations of paragraphs 1 through 66.

112.    Defendants' conduct, as described above, has caused Aspen Brands unnecessary trouble and expense and constitutes bad faith and stubborn litigiousness.

113.    Aspen Brands, therefore, is entitled to recover its reasonable attorneys' fees and other expenses of litigation pursuant to O.C.G.A. § 13-6-11.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs respectfully requests that this Court enter judgment in Plaintiffs' favor on each and every claim for relief set forth above and award Plaintiffs relief including, but not limited to, the following:

a) Awarding Plaintiffs their damages resulting from Defendants' unlawful actions;

b) Awarding Plaintiffs, at their election, either (i) actual damages and the profits derived by Defendants as a result of their infringing activities, or (ii) statutory damages in the maximum amount permitted under applicable law with respect to each infringed work, pursuant to 17 U.S.C. § 504(c);

c) Awarding Plaintiffs Defendants' profits, any damages sustained by Plaintiffs, and the costs of the action, pursuant to 15 U.S.C. § 1117;

d) Awarding Plaintiffs treble damages pursuant to 15 U.S.C. § 1117;

e)   Awarding Plaintiffs exemplary damages, treble damages, reasonable costs, and attorneys' fees, pursuant to O.C.G.A. §§ 10-1-399(a), (c) and (d);

f)   Ordering preliminary and permanent injunctive relief, including, but not limited to, relief under 15 U.S.C. § 1116, O.C.G.A. § 10-1-373, and O.C.G.A. § 10-1-399;

g)   Ordering an accounting of all profits arising from Defendants' unlawful acts;

h)   Directing that Defendants pay Plaintiffs the costs of this action and their reasonable attorneys' fees herein;

i)   Awarding Plaintiffs pre-judgment and post-judgment interest on any monetary award;

j)   Granting Plaintiffs such other and further relief as the Court may deem just and proper; and

k)   A trial by jury on all issues so triable.

This 14th day of April, 2016.

MILLER & MARTIN PLLC

By:  /s/ Eileen H. Rumfelt
        Eileen H. Rumfelt
        Georgia Bar No. 040608
        Laura Ashby
        Georgia Bar No. 595907

1180 West Peachtree Street NW
Suite 2100
Atlanta, GA 30309
Phone: (404) 962-6100
Fax: (404) 962-6300
Email: eileen.rumfelt@millermartin.com
          laura.ashby@millermartin.com

*Attorneys for Plaintiffs*

25